HEARD NOVEMBER TERM, 1877.

### BOYD *vs.* SATTERWHITE.

A devise to A for life of all testator's real estate, the same to be "sold and equally divided—one-half to " A, " to dispose of as she pleases at her death," with remainder over as to the other half: *Held*, That the power " to dispose of as she pleases at her death " could be executed by deed.

Where the instrument by which a power is claimed to have been executed is the proper one and the question is whether the power was in fact executed by the terms therein used, such question is one of intention merely; and if that appears from recitals or a description of the property or otherwise, the power is well executed.

Testator devised to his wife L. all his real estate during her natural life, and directed that at his wife's death all his land should be "sold and equally divided—one-half to my wife L., to dispose of as she pleases at her death," and the other half to others: *Held*, That the power " to dispose of as she pleases at her death " was well executed by a marriage settlement, wherein L. recited that she was possessed of considerable property, both real and personal, to wit, a tract of land, &c., which she became possessed of by virtue of the last will and testament of her late husband, being thereby entitled to a life estate in the whole land and to an absolute estate in one-half," and then conveyed her whole estate of land and slaves to C. in trust for the use and benefit of herself and her intended husband, "and at her death the tract of land, as far as she may have any legal interest, to be divested of all trust and vested in fee simple in the said B., her intended husband, or his legal representatives, should he die before her."

Where the power is to dispose of the proceeds of a sale of land, it may be executed by disposing of the land itself.

BEFORE MOSES, J., AT NEWBERRY, DECEMBER, 1875.

This was an action by William B. Boyd against John Satterwhite and another, as executors of John W. Payne, deceased, and others.

The facts are stated in the following brief, prepared by counsel for this Court:

I. The bill was filed in the Court of Equity for Newberry County on the twenty-eighth day of January, A. D. 1868, by the plaintiff, William B. Boyd, for the purpose of enjoining the sale of certain lands, formerly belonging to John W. Payne, by his executors, and for the purpose of procuring the share of those lands and other property, claimed by the plaintiff under a marriage settlement alleged to have been made by Lucinda Payne, the wife of John W., just before her marriage with the plaintiff.

II. John W. Payne, by his will, dated 17th March, 1857, left to his wife, the said Lucinda, all his real estate during her natural life, except the ferry and boat; and directed that at his wife's death all his land should be "sold and equally divided, one-half to my wife Lucinda Payne, to dispose of as she pleases at her death, and the other half to be equally divided between my brothers, James W. Payne, David Payne and Catherine Lark."

III. By the third clause of said will the testator bequeathed to his said wife a lot of negroes, furniture, &c., "to have and to hold the above named negroes and dispose of as she pleases at her death." By the fourth clause he bequeaths to his wife certain other negroes, and mules and wagons, &c., "to have and to hold during her natural life, and at her death to be sold, and one-half to go to my wife, Lucinda Payne, to dispose of as she pleases," &c. By the fifth clause he bequeaths her other personal property, "to have and to hold during her natural life, and at her death to be sold and divided as above mentioned." By the sixth clause he bequeaths her his "bank stock of money," and a judgment, "to dispose of as she pleases." By the eighth clause he directs that the remainder of his property, except that given away by the seventh clause, be sold at his death, "and one-half to go to my wife, Lucinda Payne, to do as she pleases with at her death, and the other half to be divided between" certain other persons therein named.

IV. Lucinda Payne survived her husband, and after his death, to wit, on 8th July, 1857, made her will, directing, among other things, that the half of the proceeds of the sale of lands, in which she had a life estate, should, after the payment of certain legacies be equally divided between James C. Vaughan, Henry Chappell, John Hill, Dennis C. Hill and John C. Hill. The legacies referred to were pecuniary ones to Thomas Hill, John Hill, William Chap-

pell and others, and "half the interest" she had "in the lands of" her "late husband" to Dennis C. Hill, on certain conditions.

V. Thomas Henry Chappell, the appellant, has received letters of administration, with the will annexed, of the estate of the said Lucinda.

VI. By marriage settlement executed by the said Lucinda on the 25th of May, 1858, she recites that she is possessed of considerable property, both real and personal, to wit, "a tract of land in Newberry and Laurens Districts, containing eighteen hundred acres," &c , "which said tract she became possessed of by virtue of the last will and testament of her late husband, John W. Payne, deceased, being thereby entitled to a life estate in the whole land, and to an absolute estate in one-half, and the following slaves," &c.; and she then conveys her whole estate of land and slaves to C. B. Griffin, in trust, for the use and benefit of herself and her intended husband, William B. Boyd, her intended husband to have control of the rents and profits of the property; "and at the death of the said Lucinda Payne, the tract of land, as far as she may have any legal interest, to be divested of all trust and vested in fee simple in the said William B. Boyd, her intended husband, or his legal representatives, should he die before the said Lucinda." She reserves the right to dispose of one-half of the slaves by deed or will; and in the event she does not do so, they are to be vested in the said Boyd, the other half to go to Boyd or his legal representatives.

VII. Lucinda Boyd died before the filing of the bill herein.

VIII. The case came to a final hearing at the July Term of the Court of Common Pleas for Newberry County, A. D. 1875. The only question left to be disposed of, and the only matter in which the appellant, Thomas H. Chappell, had an interest, was the point whether the plaintiff was, under the said marriage settlement, entitled to the funds arising from the sale of the property of John W. Payne, (which has all been sold by his executors,) in which Lucinda, his widow, had a life estate, and in connection with which she had certain powers of appointment; or, on the other hand, whether she had not failed to execute her power by the marriage settlement and had executed it by her will; and, therefore, whether the plaintiff or the legatees of her will should take the funds of which her husband's will gave her a power of appointment.

IX. The decree of His Honor Judge M. Moses decided that she had properly executed the power by her deed of marriage settle-

ment, and, therefore, that the plaintiff was entitled to half the proceeds of the sale of land, &c.

X. From this decree Thomas H. Chappell appeals, and insists that the deed of the said Lucinda Payne of the 25th of May, 1858, was not a proper and effectual execution of her power under the will of John W. Payne; that her will was the proper and effectual execution of that power, and, consequently, that the proceeds of the sale of the property, of which she had the power to dispose, should pass to the appellant and others, the legatees under her said will.

*Suber & Caldwell,* for appellants:

I. A power of appointment provided to be executed by will cannot be executed by a deed, because "the intention of the power in its creation was to reserve an entire control over its execution until the moment of the death of the donee; and this intention would be defeated by any other instrument than a will."—Story Eq. Jur., § 173; *Reid* vs. *Shergold,* 10 Ves., 378 ; *Bentham* vs. *Smith,* Chev. Eq., 33.

. II. The will of John W. Payne does not in express terms declare by what form of instrument or by what means the power shall be executed by the widow, Lucinda; but the forms of expression employed almost throughout indicate that she shall be able at the last moment of her life to make the disposition of property allowed her. Thus clause two provides that "all my lands be sold, and be equally divided, one-half to my wife, Lucinda Payne, to dispose of as she pleases at her death." Clause three provides that she is to dispose of negroes " as she pleases at her death." Clause eight provides that she is "to do as she pleases with" other negroes and property " at her death." The contest here is in regard to the funds derived from the sale of land referred to in clause two. Such a connection of words implies that her pleasure is to be exercised at the time of her death, and not that her pleasure is to take effect at her death. Now, no instrument is known by which she could have effected such disposition at her death, except a will, for that is the only instrument which remains ambulatory and ineffectual till death. A deed is a present, irrevocable instrument, which leaves no power to be exercised at one's death. And the construction of the power above given is the most natural and reasonable. It is most natural that a husband should provide that his wife should have that fullest con-

trol in the disposition of her share which is only to be found in a will—an instrument to the last moment revocable. And it is most reasonable that he should seek to protect her against hasty and unwise action by giving her her whole lifetime to make up her mind and correct any errors she might commit. And the individual here claiming against us—the second husband—is just the person, of the whole world, against whom the first husband would be most anxious to protect his wife.

III. The power conferred upon the widow by the will, in connection with land, was that of disposing of half of the proceeds to arise from a sale of the same after her death. It is submitted that the deed of marriage settlement does not—conceding it to be a proper instrument for that purpose—make an appointment of that fund. The deed undertakes to convey the one-half of the land to Boyd in fee simple—a totally different property. This constitutes a case not of defective execution, which equity can perfect, but of non-execution, which equity never undertakes to supply. As solemn an instrument as a deed conveying property is presumed to mean what it says, and to intend to convey just what it declares it does convey. And it is absurd to say that a deed should be held to convey a property never pretended to be conveyed by it, simply because it attempts to convey some other property which the grantor has no power to convey, and because these two properties have some natural or legal connection. And no opinion, no proof even of intention, can weigh anything in such a case. The deed must speak for itself. Thus, in a case where a party intended to secure the payment of money by mortgage, but by mistake executed a letter of attorney with power to sell, instead of a mortgage, it was held not to operate as a mortgage, however intended. "Equity may compel parties to execute their agreements, but it has no authority to make agreements for them or to substitute one for another."—Story Eq. Jur., §§ 114, 115.

*Cestui que vie* having power to dispose of money, stock, plate, &c., and disposing in her will of "all my personal estate, securities, goods, chattels and effects whatsoever and wheresoever, and of what nature, kind or quality soever, and all my estate and interest therein," *held* not to be an execution of the power.—*Bradley* vs. *Westcott*, 13 Ves., Jr., 445.

"As a gift of one species of estate or interest cannot take effect on another of a different nature, the purchase money due on a sale

of land will not pass by a devise of the land itself."—2 Am. L. C., 722.

Where an estate in land was devised to trustee and his heirs, to the use of A for life, and a power of sale, with consent of life tenant, and the trustee, with such consent, sold, without the timber, which was to be taken at a valuation, it was held that there was no execution of the power, for the power was not to sell without timber.—1 L. C. E., 189 (top).

A general devise of all lands of which the testatrix had power to dispose is not a good execution of a power to appoint moneys which were to arise from the sale of land.—*Adams* vs. *Austin,* 3 Russ., 461.

*Sullivan & Todd,* contra :

1. The power given by the will of John W. Payne, deceased, to his widow, Lucinda, was well executed by the marriage settlement between her and respondent. 4 Kent's Commentaries, 346 : " When a mode in which a power is to be executed is not defined, it may be executed by deed or will or simply by writing."

*Porcher* vs. *Daniel Reed and others,* 12 Rich. Eq., 349 : At page 353 of that case, Chancellor Dunkin says, in *Reed* vs. *Lamar,* (1 Strob. Eq., 27,) the character of the ante-nuptial contract between William B. Reed and his intended wife, then Jane McKinney, was very fully considered. It was determined that it constituted a settlement of her property to her sole and separate use. In relation to her powers under it, Judge Johnson, who heard the case at circuit, uses the following language : " The deed here confers on the wife sole direction and the full and free disposal of the property— powers as ample as any owner can exercise over property in which he has an absolute and unqualified right; and it is not questioned that, under this power, she might have disposed of it by a parol or written contract, with or without consideration, or by will, or that it would be bound if she had mortgaged it for the payment of these debts."

At page 354 the Chancellor remarks: " In *Wilson* vs. *Gaines,* (9 Rich. Eq.,) an instrument of this character executed by a *femme covert* was sustained by the Court. And see also the judgment of Lord Hardwicke, in *Ross* vs. *Ewer,* 3 Atk., 156.

April 18, 1878. The opinion of the Court was delivered by

HASKELL, A. J. There can be no question as to the quantity of the estate held by the widow Payne in the property which is the subject of this litigation. The principles announced in the case of *Pulliam* vs. *Boyd*, (2 Strob. Eq., 134,) and the authorities there cited, apply to the present case, and decide that the widow Payne had, by the will of her husband, an estate for life in the land, with a general power of appointment over the proceeds of the sale of a moiety of the land, which was directed by the will to be sold after her death.

It is argued by the appellants that this power could only be executed by will; that it was executed by a will drawn by the widow Payne in 1857; that if it could, however, be executed by deed, the deed of marriage settlement, which purports to have executed the power, has failed to execute, and is void as to the power, because it does not recite the power or describe the property, or in any wise clearly indicate an intention to execute the power. It is further contended that the power conferred upon the widow by the will was a power to dispose, not of a moiety of the land, but of the proceeds of the sale of that part of the land; and that the deed of marriage settlement with Boyd, the plaintiff, if it disposes at all, disposes not of the fund to arise from the land, but of the land itself, and is, therefore, not an execution of the power.

These points will be considered in their order.

There is no provision, by direct words, in the will of John Payne that the power of appointment thereby created should be executed only by will, nor, we think, can such intention be deduced from the language used. The words are "to dispose of as she may please at her death." The expression "as she may please" naturally refers to the object of her bounty, and not to the time at which she is to make the disposition; while "at her death" relates not to the time at which the power is to be executed, but to the time at which the disposition is to take effect. In the case of *Aaron* vs. *Beck*, (9 Rich. Eq., 411,) the language of the power is: "the half of which my wife shall die possessed to be disposed of at her death as she may think proper."

And she "made a deed," whereby, after reserving to herself "the enjoyment for life, she appointed and tranferred the aforesaid" property in trust for the use, for life, of her married daughter, &c.;

and, while the point was not decided, it was not even questioned that the power was duly executed by deed.

By transposing the words the meaning is not changed, but the grammatical order is made more apparent. "To dispose, at her death, as she may please," is the same as "to dispose as she may please at her death," and is, in meaning and order, identical with the phraseology in *Aaron* vs. *Beck*, "to be disposed of at her death as .she may think proper." The words "at her death" relate, of necessity, not to the time of the exercise of the power, but to the time at which the execution takes effect, for it is only then that the "disposition" of the property takes place. The testator's principal object seems to have been to keep for his wife the enjoyment of the property during her life. The ultimate disposition he left to her, to go into effect at her death. The deed is not inconsistent with this view, for, although made *in presenti*, it can only take effect *in futuro*. The words "as she may please, at her death," are considered as not restricting the mode or time of the exercise of the power. And "if a power be given generally, without any restrictions as to the nature of the instrument by which it is to be executed,     *     *     *     it may, in such case, be executed by deed or by will."—4 Cruise on Real Property, 253.

The power may be executed by deed, but has it been executed by the deed of marriage settlement? Very brief extracts of the deed are all that the Court has to guide it, but it is to be presumed that all that is of importance has been presented.

Sir William Grant said it was always a question of intention whether the party meant to exercise the power or not.—1 Sugden on Powers, *372; 8 Ves. Jr., 616.

"All that is necessary is that the intention to execute the power should clearly appear in writing."—Story Eq. Jur., § 172.

"An act done not strictly according to the terms of the power, but consistent with its intent, may be upheld in equity."—*Ibid*, § 172.

"An instrument may operate as a revocation and appointment without any recital or mention of the power or any declaration that such instrument was intended as an execution of the power; for if the act done be of such a nature that it can have no operation unless by virtue of the power, and thereby give validity to the instrument upon the principle or rule of law that *quando non valet quod ago, ut ago, valeat quantum valere protest.*"—4 Cruise on Real Prop., 257.

If the donee of a power either refer to the deed out of which the power arose or describe the property over which he has a power of disposition, it is sufficient to prove the intention.—*Ibid*, 259; *Robert* vs. *Morgan*, 1 Atk., 441 ; Sugden on Pow., *357–367.

The words which confer the power upon the widow Payne are contained in a will which was thus described in a previous case between the widow and some of the same parties, (12 Rich. Eq., 494) : " The testator was an uneducated planter, little acquainted with legal or commercial terms, and he employed a like person to draw his will." The opinion in the same case concludes with an order that the Commissioner, among other things, report, " distinguishing between the various bequests made to the complainant, Lucinda,— some absolutely, some for life with power of disposition in the whole, and some for life with power of disposition in part."

The obscurity of the unprofessional language of the will must be considered in connection with the terms used in the deed of marriage settlement, which alludes to the will as the source from which the rights disposed of by the deed are derived. There certainly had been no adjudication upon the will at the time the widow Lucinda drew her will (1857) or at the time she executed her marriage settlement, (1858,) and it may have been uncertain in her mind exactly what was the character of her estate or interest in these lands.

In the deed of settlement she recites, among other property in her possession, " a tract of land in Newberry and Laurens Districts containing eighteen hundred acres," " which said tract she became possessed of by virtue of the last will and testament of her late husband, John W. Payne, deceased, being thereby entitled to a life estate in the whole land and to an absolute estate in one-half and the following slaves."

All this she conveys to C. B. Griffin in trust. The execution of the power, if at all, is in the following words : "And at the death of the said Lucinda Payne, the tract of land, as far as she may have any legal interest, to be divested of all trust and vested in fee simple in the said William B. Boyd, her intended husband." Whether the "tract of land" as used in the last clause means the " whole land " or the half in which she says she has an absolute estate is not stated, and we have not the entire deed from which to derive a conclusion; but as she had so definitely limited her estate to the whole to life, the inference is that she concludes in this clause

to the "one-half" which she had mentioned above. But this, perhaps, is not material.

It is possible that Lucinda Payne had a misconception of the character of her estate in that moiety. She may have thought or been advised, as so eminent a Chancellor had decreed in *Pulliam* vs. *Byrd*, that a grant to her for life, with a power to her to dispose of one-half of it at her pleasure beyond her life, came within all the definitions of an absolute title. This opinion, however, had been corrected by the Court of 'Appeals previous to the time the deed was executed, and it must be observed that she uses this expression, "absolute estate." In the recital to the conveyance to the trustee, the terms used in the grant do not appear; it is merely said "she conveys her whole estate of land." It seems that the words "absolute estate" are used in the recital more to draw a distinction between the interests which she has in the whole and a separate interest in a moiety than to define her legal title to that moiety. But if she did mistake the character of her right to or over that moiety, that is not material, unless it further appears that she set up that title in defiance of the wish expressed in her husband's will and conveyed the property to Boyd by virtue of her title absolute and not under the power. It can hardly be said that this appears from the words used. She recites the will and refers to it as the source whence she derives any right she may have in the property. She describes the property and disposes of it by the following words : "And at the death of the said Lucinda Payne, the tract of land, as far as she may have any legal interest, to be divested of all trust and vested in fee simple in the said William B. Boyd." She thus refers to the will which contains the powers; she describes the property, and intended either to execute the power or to recite it and ignore it. If she meant the latter, we think the words of conveyance would have been more positive and absolute. The words descriptive of her right are "the land as far as she may have any legal interest." This cannot refer to the amount of land, whether the whole or the half, for of that there would be no doubt or question; it must refer to the character of her interest in that half. If that be the meaning of the words, and we think it is, her intention was to convey to Boyd, by any right or power that in her was, the land or whatever interest in the land that was at her disposal. This view is confirmed by the fact that in the will of 1857, which it is claimed was the execution of the power, the words by which she

seeks to execute it are by leaving "half the interest" she had "in the lands of her late husband." "Interest in land" is not different in such a case from "land as far as one may have legal interest" in it. Either expression would be enough to execute a power of appointment either of the land or of the proceeds to arise from the sale of the land, provided the words could not apply to any other than the property intended by the donor.

And this leads us to the last point—that the disposition of the land or "interest in the land" is not an execution of the power to dispose, where a sale of the land is also ordered by the donor; that appointor was bound to indicate or name the fund, and that alone could she appoint.

In the case of *Standen* vs. *Standen*, (2 Ves., Jr., 589,) fully discussed in Sugden on Powers, *378, the circumstances are not very dissimilar. The husband, by will, directed his estate to be sold, and gave the money and his other personal estate to wife for life, with power of appointment as to one moiety. The land was not sold. The widow, by will, "gave all the residue of her estate and effects, whether real or personal, which she should be possessed of, interested in or entitled to at the time of her decease to her friend, J. H.:" *Held*, That the will was an execution of the power, from the fact that by the will she "gives all her estate and effects"—that this is of necessity included. But, in addition, held to be an execution, because the intention was manifest, from the fact that she had no other real estate. The present case is stronger than *Standen* vs. *Standen*, because the property is specified and described.

The land in each case was ordered to be converted into money, but in each it had not been converted previous to the execution of the power, and the land was appointed.

In Sugden, *398, it is said by the Judge, in another case: "The case of *Standen* vs. *Standen* had established that with regard to real estate the Court may examine whether the circumstances of the testator's property are such as to give effect to the will; and if this will had given an unequivocal devise of realty, the Court must, in order to give operation to an instrument which would otherwise be inoperative, have reverted to the fund the subject of the power." The widow Payne had no other real estate capable of her disposition under the will, to which she refers her right, and the deed would be inoperative if it were not applied to her "interest" in this land. We consider the gift or appointment by which she directs that the

"land, as far as she may have any legal interest," sufficiently describes the property and applies to the land or the proceeds of the sale of the land when sold, and, as was intimated above, regard the adoption of the sort of double form to have been for the purpose of vesting the property in Boyd, under the title, or by the power, whichever it might be ascertained she had. And equity will regard the property as land or as money, as may be necessary to carry out the purposes of the donor. It would be strange if the execution of a power appointing to land, which it is ordered shall subsequently be sold, should be defeated because the appointor had, after fully describing the property, and referring to the power, should call it "land" instead of "the proceeds to arise from the sale of the land."

The judgment of the Court below is affirmed. Motion dismissed.

*Willard*, C. J., and *McIver*, A. J., concurred.

---

HEARD NOVEMBER TERM, 1877.